UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Worcester)

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| PETROLEX MANAGEMENT, LLC, | ) Case No. 16-41322 (CJP) |
|  | ) |
| Debtor | ) |

**HOME LOAN INVESTMENT BANK, FSB'S**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Home Loan Investment Bank, FSB ("Home Loan"), the holder of a mortgage lien and collateral assignment of rents encumbering the property known as 80 Chelmsford Road, Billerica, Middlesex County, Massachusetts 01862 (the "Property") owned by Petrolex Management, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), by and through its counsel, hereby moves pursuant to 11 U.S.C. § 362(d)(1) and (2) for relief from the automatic stay to exercise its rights under contract and Massachusetts law, including re-commencement of a foreclosure sale of the Property. In support of its Motion, Home Loan relies on the Affidavit of Jarred Burrell ("Burrell Affidavit") filed herewith and further states as follows:

**PRELIMINARY STATEMENT**

The Debtor and its operating entity - IMS Enterprise, Inc. ("IMS")– are co-obligors on a loan from Home Loan secured by the Debtor's Property. The Debtor and IMS have failed and refused to make any payments whatsoever to Home Loan for the past five years, while at the same time the Debtor's principals have admitted that they are directing corporate funds to

support their relatives living in Syria. Due to this intractable situation, Home Loan commenced foreclosure proceedings, but on the eve of auction the Debtor commenced this case.

Given the Debtor's principals' stated intentions and past practices, Home Loan's lack of adequate protection, the Debtor's lack of equity in the Property, and lack of reorganization prospects, Home Loan is entitled to relief from the automatic stay to re-commence its foreclosure sale of the Property. In the event that the Court does not grant Home Loan's motion for relief, Home Loan is entitled to adequate protection payments of $5,500.00 per month to preserve its second priority perfected security interest in the Debtor's assets.

## JURISDICTION

1. On July 27, 2016 (the "Petition Date"), the Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code.

2. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this matter is a core proceeding pursuant to 28 U.S.C. §157(b).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief sought are 11 U.S.C. §§ 105 and 362.

## THE DEBTOR AND NON-DEBTOR ENTITIES

5. On information and belief and based on Massachusetts Secretary of State filings, the Debtor is a privately held corporation owned by Imad Massabni ("Imad") and Samer Biloune ("Samer"). See Exhibit "A" attached hereto.

6. On information and belief and based on Massachusetts Secretary of State filings, the Debtor's tenant – IMS - is also owned by Imad and Samer. See Exhibit "B" attached hereto.

7. On or about June 24, 2008, the Debtor and IMS executed and became co-obligors on a U.S. Small Business Administration Note (the "Note") in the original principal amount of $882,000.00. A copy of the Note is attached hereto as Exhibit "C."

8. On or about June 24, 2008, the Debtor granted a mortgage (the "Mortgage") on the Property to Home Loan to secure repayment of the Note and performance of all other existing or thereafter arising obligations of Debtor. The Mortgage was recorded at the Middlesex (North) Registry of Deeds (the "Registry") in Book 22273, Page 34 on June 26, 2008. A copy of the Mortgage is attached hereto as Exhibit "D."

9. On or about June 24, 2008, the Debtor executed a conditional assignment of leases and rents (the "Assignment of Leases and Rents") with respect to any leases related to the Property. The Assignment of Leases and Rents was recorded at the Registry in Book 22273, Page 57 on June 26, 2008. A copy of the Assignment of Leases and Rents is attached hereto as Exhibit "E."

10. On or about June 24, 2008, IMS executed a subordination, non-disturbance, attornment and estoppel agreement (the "SNDA") in favor of Home Loan with respect to any leasehold interest in the Property. The SNDA was recorded at the Registry in Book 22273, Page 65 on June 26, 2008. A copy of the SNDA is attached hereto as Exhibit "F."

11. On or about June 24, 2008, Debtor, IMS, Home Loan, and Gulf Oil Limited Partnership ("Gulf") executed a subordination agreement (the "Gulf Subordination") in favor of Home Loan with respect to Gulf's option to purchase the Property. The Gulf Subordination was recorded at the Registry in Book 22345, Page 171 on July 28, 2008. A copy of the Gulf Subordination is attached hereto as Exhibit "G."

12. On or about June 24, 2008, Imad and Samer executed an unconditional guarantee (the "Personal Guarantee") of payment to Home Loan of all amounts owing under the Note. A copy of the Personal Guarantee is attached hereto as Exhibit "H."

13. Pursuant to a lease (the "Lease") dated February 15, 2001 between Petrolex and IMS, IMS is required to make monthly lease payments to Petrolex of $6,200. A copy of the Lease is attached hereto as Exhibit "I."

14. The Lease has a thirty-five-year term and contains no rent escalation provisions whatsoever. On information and belief, these unusually tenant-friendly Lease terms are the result of the common ownership of the Debtor and IMS by Imad and Samer. See Burrell Affidavit at paragraph 4.

15. Due to defaults under the Note, Personal Guarantee and other Home Loan documents described above (the "Loan Documents"), Home Loan commenced an action against IMS, Imad, and Samer (collectively, the "Non-Debtor Obligors") in Massachusetts state court on October 25, 2013 (2013MICV-04674L2) culminating in the entry of a default judgment February 25, 2014 and issuance of an execution (the "Execution") on May 13, 2014 in the amount of $1,055,427.30 (Damages: $1,029,726.00; Costs: $303.10; Post-Judgment Interest: $25,398.20). A copy of the Execution is attached hereto as Exhibit "J."

16. Home Loan is presently pursuing the Non-Debtor Obligors on the Execution – which remains wholly unsatisfied.

17. On May 19, 2016, representatives of Home Loan met with Imad and Samer to discuss the serious delinquency of the Debtor's loan obligations to Home Loan and the impending foreclosure sale of the Property. Imad and Samer advised Home Loan that they were willing to file bankruptcy, if the foreclosure sale wasn't stopped. Imad and Samer acknowledged

4

that neither the Debtor nor the Non-Debtor Obligors had made any payments on their obligations to Home Loan in five years. They also acknowledged their failure to supply required financial information for the Debtor's operations. Imad and Samer indicated that they were working day and night to support their current families in the US, as well as supporting 4 families in Syria. Imad's and Samer's proposal was that Home Loan accept monthly payments of $2,000 (interest accrues on the Home Loan Note at a monthly rate in excess of $4,000) for an additional 4 years, while the Debtor paid off the first lien holder. See Burrell Affidavit at paragraph 4.

## THE PROPERTY

18. The Property comprises a retail gasoline and food mart operation along with a portion of the premises leased to a Dunkin Donuts tenant.

19. As set forth in the Appraisal of Petroval dated as of June 2, 2016 (the "June 2016 Appraisal," a copy of which is attached to the Burrell Affidavit as Exhibit A) the value of the Property including its business operations is $2,340,000.00. This valuation comprises the following elements:

| | |
|---|---|
| Intangible Value | $ 230,000 |
| Equipment Value | $ 160,000 |
| Real Estate value | $1,950,000 |

20. In the Debtor's cash collateral motion, it values the Property at $1,400,000.

### ALLEGATIONS REQUIRED BY MLBR 4001-1 (b)(2)

21. As of the Petition date, the outstanding balance due on the Note was as follows:

| | |
|---|---|
| Principal: | $ 850,198.53 |
| Interest: | $ 211,591.86 |
| Late Fees: | $   16,496.65 |
| Collection Costs & Fees: | $  128,021.49 |
| **Total** | **$1,206,308.53\*** |

5

*plus continuing interest, costs and attorneys' fees and expenses. Interest accrues at the per diem rate of $139.7586. See Burrell Affidavit at paragraph 1.

22. Pursuant to the Debtor's Cash Collateral Motion, the encumbrances on the Property as of the Petition Date are as follows:

| Creditor | Priority | Claim | Collateral |
|---|---|---|---|
| Petroleum & Franchise Capital LLC ("Petroleum Franchise") | First Mortgage | $1,100,000.00 | Mortgage & Assignment of Rents |
| Home Loan Investment Bank | Second Mortgage | $ 900,000.00 | Mortgage & Assignment of Rents |
| A.L. Prime Energy Consultants ("A.L. Prime") | Third Mortgage | $ 365,000.00 | Mortgage & Assignment of Rents |
| Yatco Distribution LLC ("Yatco") | Fourth Mortgage | $ unknown | Mortgage & Assignment of Rents |

23. Based on the foregoing, the aggregate value of encumbrances on the Property are not less than $2,365,000 - prior to accounting for the fourth position lien of Yatco. Additionally, the Debtor under-reports its obligations to Home Loan by approximately $300,000.00.

24. In addition, as set forth in the Municipal Lien Certificate (the "MLC") attached hereto as Exhibit "K," the Debtor is $38,571.99 in arrears on its Property taxes as of July 13, 2016, and interest is accruing since that date at the rate of $13.71 per diem.

25. Whether the Debtor's Property valuation of $1,400,000 or Home Loan's real estate and equipment valuation of $2,110,000 is correct, it is clear that the Debtor has no equity in the Property given the liens encumbering the Property.

26. As noted previously, Home Loan is pursuing the Non-Debtor Obligors on its Execution, but its expected recovery on these actions will leave a deficiency remaining in excess of $1,000,000.00.  See Burrell Affidavit at paragraph 5.

27. Based upon the above, the fair market value of the Property is less than the indebtedness secured by the Property.

28. Home Loan is not aware of any recorded declaration of homestead.

## LEGAL ARGUMENT

29. In pertinent part, 11 U.S.C. § 362(d)(l)-(2) provide that:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section:

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the Debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

30. The Debtor has failed to timely make payments under the Loan Documents, including post-petition payments.  Accordingly, Home Loan lacks adequate protection of its interest in the Property and the Court should grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

31. Additionally, the Debtor has not provided any indication or proof that it is making required real estate tax and water/sewer payments as they become due.  Given the tax arrears

reflected in the MLC (see Exhibit K hereto), Home Loan believes that its equity is being undermined by accrual of tax and other unpaid municipal lien obligations, entitling Home Loan to relief under § 362(d)(1).

32. Home Loan also seeks relief from the automatic stay under 11 U.S.C. § 362(d)(2) because the Debtor has no equity in the Property and the Property is not necessary to an effective reorganization.

33. The Debtor's cash collateral motion states that the Property is worth $1,400,000.00 and that the encumbrances on the Properties total no less than $2,365,000.00.

34. Because the Property is significantly underwater and encumbrances on the Property are increasing with the passage of time, the prospects of an effective reorganization are minimal or non-existent.

35. As set forth in the Burrell Affidavit, Home Loan has recently obtained an appraisal that values the Property and equipment at approximately $2,110,000. If Home Loan's valuation is correct, it is possible that Home Loan could be fully secured (appraised value of $2,110,000, less first lien of $900,000 leaves $1,210,000 available to satisfy Home Loan's Petition Date claim of $1,206,308.53). However, continuing interest as well as the two secured claims behind Home Loan would certainly consume any remaining equity in the Property.

36. Succinctly, under either valuation, the Debtor has no equity in the Property.

37. Under Section 362(g) of the Code, the Debtor bears the burden of proving that the Property is necessary to its reorganization. The United States Supreme Court has held that a showing of necessity is "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means . . . that there must be 'a reasonable

possibility of a successful reorganization within a reasonable period.'" *United Saving Assn of Texas v. Timbers of Inwood Forest Associates, Ltd*., 484 U.S. 365, 375-76 (1988). That the property in question is indispensable to a debtor's business does not, without more, justify preserving the automatic stay. *See In re Riviera Inn of Wallingford, Inc*., 7 B.R. 725, 728 (Bankr. D. Conn. 1980). Instead, the debtor must make a strong showing that, *inter alia*, it is moving meaningfully to propose a plan of reorganization and that the contemplated plan has a realistic chance of being confirmed. *See In re Building 62 Limited Partnership*, 132 B.R. 219, 222-23 (Bankr. D. Mass. 1991). Indeed, the reference to "effective reorganization" in section 362(d)(2)(B) requires that the Court grant relief from the stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations. *See In re Channel Really Associates Limited Partnership*, 142 B.R. 597 (Bankr. D. Mass. 1992); *see also In re National Real Estate Limited Partnership II*, 87 B.R. 986, 990-91 (Bankr. D. Wis. 1988).

38. Given the Debtor's conduct, Home Loan is unlikely to vote to accept a plan of reorganization filed by the Debtor and any such plan of reorganization requires Home Loan's approval to be confirmable.

39. If Debtor's valuation of the Property ($1,400,000) and the first lien amount ($900,000) are correct, then there is only $500,000 in remaining value available to satisfy Home Loan's $1.2 million claim. Consequently, Home Loan would possess under this scenario an unsecured deficiency claim of $700,000 which would likely create a blocking position with respect to any hypothetical plan of reorganization proposed by the Debtor.

40. Home Loan's counsel has conferred with Debtor's counsel on multiple occasions since commencement of this bankruptcy case in an effort to obtain in an effort to resolve this matter and narrow the disputes contained in the motion without success.

41.     A proposed form of Order granting Home Loan relief from stay is attached hereto.

WHEREFORE, Home Loan Investment Bank, FSB, respectfully requests that this Court enter an order granting Home Loan Investment Bank, FSB relief from the automatic stay and thereby allowing Home Loan to exercise any and all of its rights and remedies under its loan agreements and applicable law including, without limitation, foreclosing its mortgages on 80 Chelmsford Road, Billerica, Massachusetts, enforcing its collateral assignments of leases and rents with respect to said property, taking possession of any or all of said property, selling said property, and applying the sale proceeds and any rents collected in full or partial satisfaction, as the case may be, of the outstanding indebtedness secured by 80 Chelmsford Road, Billerica, Massachusetts; and grant such other and further relief that this Court deems just and proper.

HOME LOAN INVESTMENT BANK, FSB

By its attorneys,

Dated: August 16, 2016

/s/ Frank F. McGinn
Frank F. McGinn, BBO #564729
ffm@bostonbusinesslaw.com
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA  02110
Tel. (617) 422-0200
Fax. (617) 422-0383